**McCUSKER, ANSELMI, ROSEN & CARVELLI, PC.**  Hearing date: April 27, 2015
805 Third Avenue, 12th Floor
New York, New York 10022
212-308-0070

**LAW OFFICES OF WILLIAM S. KATCHEN, LLC**
210 Park Avenue, Suite 301
Florham Park, New Jersey 07932
(Admitted *pro hac vice*)

*Counsel for Cumberland Farms, Inc. and Gulf Oil Limited Partnership*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MEDFORD DEVELOPMENT CORP.,<br>MOTOR PARKWAY ENTERPRISES, INC.,<br>AIRPORT DEVELOPMENT CORP.,<br>WHEELER DEVELOPMENT, LLC,<br>BRENTWOOD DEVELOPMENT CORP.,<br>SMITHTOWN DEVELOPMENT CORP.,<br>HOLBROOK DEVELOPMENT CORP.,<br>CARMAN DEVELOPMENT CORP.,<br>MAPLE AVENUE HAUPPAUGE DEV. CORP.,<br>PORT JEFFERSON DEVELOPMENT CORP.,<br>RONKONKOMA DEVELOPMENT CORP.,<br>ISLANDIA DEVELOPMENT CORP.,<br>OCEANSIDE ENTERPRISES, INC.,<br>ISLIP DEVELOPMENT CORP.,<br>WESTBURY ENTERPRISES, INC.,<br><br>    Debtors. | Chapter 11<br><br><br><br><br><br>Case No.: 14-75666 (AST)<br><br>Jointly Administered<br><br>Hon. Alan S. Trust, U.S.B.J. |
| MEDFORD DEVELOPMENT CORP., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CUMBERLAND FARMS, INC., and GULF OIL LIMITED PARTNERSHIP,<br><br>    Defendants. | Adv. Pro. No.: 15-08020 (AST) |

**OBJECTION TO DEBTORS' ORDER TO SHOW CAUSE FOR AN
ORDER STAYING THE DISTRICT COURT ACTION**

TO:    The Hon. Alan S. Trust
         United States Bankruptcy Judge

Cumberland Farms, Inc. ("Cumberland") and its subsidiary, Gulf Oil Limited Partnership (collectively, "Gulf"),[1] though their attorneys, McCusker, Anselmi, Rosen & Carvelli, P.C. and the law offices of William S. Katchen, LLC, hereby submit this objection to Debtors' Order to Show Cause for an Order Staying the District Court Action (Docket Items 4 and 6).[2] In support of the instant objection, Gulf states as follows:

**INTRODUCTION**

1. As set forth in detail below, this matter arises from the relationship between Gulf and Steve Keshtgar ("Keshtgar").

2. Cumberland and Gulf are in the business of franchising gasoline stations. The franchise agreement includes leases and an agreement to purchase their branded fuel as part of the franchise process. Shortly before 10 of 18 franchised stations owned by Keshtgar filed for Chapter Eleven protection on Christmas Eve 2014, Gulf had served termination notices on all of them for significant financial defaults. A few weeks later, all but one of the remaining stations entered Chapter Seven (the stations that have filed petitions under Chapter Eleven or Chapter Seven are hereinafter collectively referred to as the "Filing Entities").

---

[1] While Cumberland and Gulf are distinct legal entities, they are acting in common in this matter. Accordingly, references to either entity are, for the purposes of this objection, intended to refer to both entities.

[2] The Court had originally directed that objections to Debtors' Order to Show Cause were to be filed by March 9, 2015 at 4:00 p.m. See March 3, 2015 letter filed by Debtors (Docket Item 5). However, this deadline was subsequently extended by ten days pursuant to a March 6, 2015 Standstill Stipulation and Order entered by the Court. (Case No. 14-75666 (AST), Docket Item 140).

3. Prior to the filing of the Filing Entities' petitions, the Filing Entities had incurred substantial arrearages to Gulf, as described in detail in Gulf's previous filings with the Bankruptcy and District Courts. On February 6, 2015, Gulf commenced an action in the United States District Court for the Eastern District of New York (the "District Court Action") against Cedarhurst Development Corp. (a station owned by Keshtgar that has not filed a bankruptcy petition), Keshtgar, and Shoreh Keshtgar (the wife and business associate of Keshtgar, referred to herein at all times by her full name for the sake of clarity) (collectively, "Non-Debtors"). See District Court Action Complaint (District Court Action Docket Item 1).[3]

4. The basis of the District Court Action is the independent liability of Cedarhurst, Keshtgar, and Shoreh Keshtgar upon their unconditional guarantees of all indebtedness incurred by all of the stations (including the Filing Entities). See id.; Aetna Cas. & Sur. Co. v. Namrod Dev. Corp., 140 B.R. 56, 59-60 (S.D.N.Y. 1992) (holding that non-debtors were "independently liable" to plaintiff based upon their personal guarantees).

5. For the reasons set forth herein, Gulf respectfully requests that the Court deny, in its entirety, Debtors' application to extend the automatic stay to bar the District Court Action.

**FACTUAL BACKGROUND**

6. Gulf hereby incorporates by reference Gulf's Motion to Withdraw the Reference (Bankruptcy Docket Item 95).[4]

7. Gulf further incorporates by reference: (1) the January 7, 2015 Declaration of Kevin Cummins (Bankruptcy Docket Item 23-2); (2) Gulf's Objection to Debtors' Motion to (I) Authorize

---

[3] For the purposes of this motion, citations to documents filed with the District Court in Case No. 15-cv-00580 (LDW)(AKT) will refer to the "District Court Action Docket."

[4] For the purposes of this motion, citations to documents filed with the Bankruptcy Court in Case No. 14-75666 (AST) will refer to the "Bankruptcy Docket."

the Sale of Substantially All of Certain Debtors' Assets; (II) Authorize the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases; and (III) Extend the Time to Assume or Reject Executory Contracts and Unexpired Leases (Bankruptcy Docket Item 64); (3) the January 22, 2015 Second Declaration of Kevin Cummins (Bankruptcy Docket Item 64-2); (4) the Declaration of Peter Hickey (Bankruptcy Docket Item 78-1); (5) the transcript of the January 26, 2015 status conference before the Bankruptcy Court (Bankruptcy Docket Item 149-1); and (6) the transcript of the February 19, 2015 hearing on the Stay Relief Motion, Sale Motion, and First 5011(c) Motion before the Bankruptcy Court (Bankruptcy Docket Item 149-2).

## ARGUMENT

### I. LEGAL STANDARD

#### A. General Rule

8. Section 362 of the Bankruptcy Code stays "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1).

9. "It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants. Chapter 11, unlike Chapter 13, contains no provision to protect non-debtors who are jointly liable on a debt with the debtor." Teachers Ins. & Annuity Ass'n of Am. v. Butler, 803 F.2d 61, 65 (2d Cir. 1986) (internal citations omitted); see also A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986); In re Adler, 494 B.R. 43, 57-59 (Bankr. E.D.N.Y. 2013) appeal denied, judgment aff'd sub nom. Ng v. Adler, 518 B.R. 228 (E.D.N.Y. 2014); Robert Plan Corp. v. Liberty Mut. Ins. Co., No. 09-08027, 2010 WL 1193151, at *3

(E.D.N.Y. Mar. 23, 2010) ("By its terms, § 362 applies only to actions against debtors, debtor's property, or estate property, and does not stay proceedings against non-debtors").

### B.   Standard Governing Extension of the Automatic Stay

10.   Notwithstanding this general rule, "[t]he automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282, 287-88 (2d Cir. 2003) (citing A.H. Robins, supra, 788 F.2d at 999); see also Adler, supra, 494 B.R. at 57-59 (extending stay to claims against non-debtor corporations where debtor found to be liable as alter ego of non-debtor).

11.   In Queenie, the Court of Appeals for the Second Circuit articulated three circumstances in which the automatic stay can apply to non-debtors.  These situations are: (1) "claim[s] to establish an obligation of which the debtor is a guarantor," (2) "claim[s] against the debtor's insurer," and (3) "actions where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant.'" Id. (extending automatic stay to encompass wholly owned subsidiary of debtor) (citations omitted). But see In re Pitts, No. 808-74860-REG, 2009 WL 4807615, at *4-7 (Bankr. E.D.N.Y. Dec. 8, 2009) ("the mere existence of a claim against a corporation wholly owned by the Debtor does not affect his bankruptcy").

12.   This exception to the general rule is a "narrow" one. Pitts, supra, 2009 WL 4807615, at *5; Ebin v. Kangadis Family Mgmt. LLC, No. 14-CV-1324 JSR, 2014 WL 4638700, at *2 (S.D.N.Y. Sept. 18, 2014) ("A non-debtor can claim the protection of a debtor's stay only in very unusual circumstances, where to do otherwise would immediately and necessarily deplete the assets of the debtor's estate").

13.     "Moreover, extensions of the stay to protect non-debtor parties are the exception, not the rule, and are generally not favored. Thus, the movant must show by 'clear and convincing evidence' that extension of the stay is warranted." In re FPSDA I, LLC, No. 10-75439, 2012 WL 6681794, at *7-8 (Bankr. E.D.N.Y. Dec. 21, 2012), as corrected (Dec. 26, 2012) (citation omitted); Millard v. Developmental Disabilities Inst., Inc., 266 B.R. 42, 45 (E.D.N.Y. 2001) ("This question must be considered in conjunction with the directive that extensions of the Automatic Stay are the exception rather than the rule and are not favored absent some usual circumstance"). See also In re Metromedia Fiber Network, Inc., 416 F.3d 136, 141 (2d Cir. 2005) (explaining that non-debtor releases contained in reorganization plan "[are] proper only in rare cases"); cf. In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 293 (2d Cir. 1992) (approving confirmation of plan including non-debtor release where estate received substantial consideration therefor); In re Charter Commc'ns, Inc., 449 B.R. 14, 27 (S.D.N.Y. 2011) aff'd but criticized, 691 F.3d 476 (2d Cir. 2012) (same).

14.     In determining whether to extend the automatic stay to bar claims against non-debtors, a court considers the following factors:

> (1) whether continuation of outside litigation would so distract individuals important to the reorganization process as to impede the reorganization effort; (2) whether extension of the stay would work a hardship on plaintiffs by giving "unwarranted immunity" to solvent defendants; (3) whether a recovery would so reduce the debtor's limited insurance fund as to affect the property of the estate and (4) whether or not the non-bankrupt party seeking the stay is independently liable to the plaintiff.

Millard, supra, 266 B.R. at 44.

15.     "Further, the stay should not be extended where the non-debtor is 'independently liable as, for example, where the debtor and another are joint tortfeasors or where the nondebtor's liability rests upon his own breach of duty.'" FPSDA I, LLC, supra, 2012 WL 6681794, at *7-8 (quoting A.H. Robins, supra, 788 F.2d at 999-1000); Cano v. DPNY, Inc., 287 F.R.D. 251, 261-

62 (S.D.N.Y. 2012) ("where the debtor and non-debtor co-defendant are joint tortfeasors or where the non-debtor's liability rests upon his own breach of duty, a stay clearly cannot be extended to the non-debtor") (quoting Variable–Parameter Fixture Development Corp. v. Morpheus Lights, Inc., 945 F.Supp. 603, 608 (S.D.N.Y. 1996)); Aetna, supra, 140 B.R. at 59-60 (holding that non-debtors were "independently liable" to plaintiff based upon their personal guarantees)..

16.     Last, a Bankruptcy Court cannot employ Section 105 to issue a stay with respect to non-debtors based upon "efforts made in bad faith by non-bankrupt co-defendants in order to escape from the liability imposed by an adverse district court judgment." Teachers Ins., supra, 803 F.2d at 65-66.

## II. NON-DEBTORS ARE NOT ENTITLED TO EXTENSION OF THE AUTOMATIC STAY

17.     Here, extension of the automatic stay to bar the District Court Action is improper because: (1) Debtors are not in the process of any reorganization effort, (2) continuation of the District Court Action will not distract Debtors' principals so as to impede any reorganization effort, (3) extension of the stay would prejudice Gulf by conferring upon Non-Debtors an "unwarranted immunity," (4) recovery by Gulf in the District Court Action will not diminish Debtors' insurance fund so as to affect the property of their estates, and (5) Non-Debtors are independently liable to Gulf.

### A.     Debtors Are Not in the Process of Any Reorganization Effort

18.     "Clearly, the underlying purpose behind embracing non-debtor officers and directors within the stay provided by § 362(a)(1) is to suspend actions that pose a serious threat to a corporate debtor's reorganization efforts." In re First Cent. Fin. Corp., 238 B.R. 9, 19 (Bankr. E.D.N.Y. 1999) (citing In re United Health Care Org., 210 B.R. 228, 234 (S.D.N.Y. 1997)). "The broader rule here is that a debtor's stay may extend to a non-debtor ***only when necessary to protect***

*the debtor's reorganization.*" Gray v. Hirsch, 230 B.R. 239, 243 (S.D.N.Y. 1999) (emphasis added).

19. "[I]n the absence of evidence which demonstrates any impact upon the debtor's reorganization effort, the stay cannot be extended to a solvent co-defendant." Id. at 244 (quoting CAE Indus. Ltd., et al. v. Aerospace Holdings Co., et al., 116 B.R. 31, 34 (S.D.N.Y. 1990)). The rule permitting extension of the automatic stay is therefore inapplicable to cases under Chapter Seven. Id.; Uto v. Job Site Servs., Inc., 444 B.R. 222, 224 (E.D.N.Y. 2011) (denying request for extension of stay where debtor "is liquidating-as per Chapter 7 of the Bankruptcy Code and therefore 'there is no risk to any reorganization'" (citations omitted)).

20. Here, there cannot possibly be any threat to the reorganizations of Debtors' because Debtors, although nominally proceeding under Chapter Eleven, have sought this Court's authorization to liquidate substantially all of the Filing Entities' assets. See Pitts, supra, 2009 WL 4807615, at *4-7 (denying extension of automatic stay where "[i]n our case, there is no risk to any reorganization if the stay is not extended to the Corporate Defendants because the Debtor is liquidating"); see also Debtors' Motion to (I) Authorize the Sale of Substantially All of Certain Debtors' Assets (II) Authorize the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases; and (III) Extend the Time to Assume or Reject Executory Contracts and Unexpired Leases (Bankruptcy Docket Item 47).

21. The indisputable fact that Debtors are not reorganizing is, by itself, fatal to Non-Debtors' application to extend the automatic stay to bar the District Court Action. Gray, supra, 230 B.R. at 243, Uto, supra, 444 B.R. at 224; Pitts, supra, 2009 WL 4807615, at *4-7.

### B. Continuation of the District Court Action Will Not Distract Debtors' Principals So as to Impede Any Reorganization Effort

22. Notwithstanding that there is no ongoing reorganization effort, requiring Keshtgar to defend to District Court Action will not distract him so as to interfere with Debtors' bankruptcy proceedings.

23. "[C]ourts in [the Second] Circuit have regularly refused to extend a debtor corporation's § 362(a) stay to its non-debtor officers and principals." Gucci Am., Inc. v. Duty Free Apparel, Ltd., 328 F. Supp. 2d 439, 441 (S.D.N.Y. 2004); Gray, supra, 230 B.R. at 242 (non-debtor's "control over the [debtor] entities is insufficient, without more, for their stay to encompass this action against him"); First Cent. Fin. Corp., supra, 238 B.R. at 18 ("Therefore, lawsuits instituted against officers and directors of a corporate debtor are usually not stayed").

24. In FPSDA I, LLC, supra, 2012 WL 6681794, at *15-16, the Bankruptcy Court specifically rejected an argument that the automatic stay should be extended to bar claims against the non-debtor president of the debtor corporation because "the aggravation and expense of litigating that matter would divert his time and attention from his work [and] in turn, would materially impede the reorganizations herein."

25. The court explained that, where courts have extended the automatic stay to bar claims against non-debtor principals,

> these cases involved very large, complex reorganizations, and the litigation sought to be stayed presented very formidable discovery and other demands, together with very large numbers of potential claimants. Therefore, to allow the litigation to proceed against those in charge of the debtors would be so burdensome that the principals would hardly be able to devote the needed time and attention to the debtors' reorganization.

Id. (citing A.H. Robins, supra, 788 F.2d at 999).  See also Millard, supra, 266 B.R. at 45 (extension of stay "not warranted" where "case is not so complex as to require an inordinate amount" of non-debtor principal's time).

26.     Here, the District Court Action concerns straightforward claims upon guarantees by Non-Debtors. They do not even approach the complexity of the cases to which courts have extended the automatic stay based upon potential distraction of principals. See, e.g., A.H. Robbins, supra, 788 F.2d 994 (concerning debtor facing "an avalanche of actions filed in various state and federal courts throughout the United States by citizens of this country as well as of foreign countries seeking damages for injuries allegedly sustained by the use of an intrauterine contraceptive device known as a Dalkon Shield"); In re Johns-Manville Corp., 26 B.R. 420 aff'd, 40 B.R. 219 (S.D.N.Y. 1984) and appeal allowed, decision vacated in part, 41 B.R. 926 (S.D.N.Y. 1984) (concerning debtor facing "more than 11,000 asbestos-related personal injury and property damage suits brought by more than 15,500 plaintiffs in 46 states" and where debtor "estimates that approximately 32,000 additional suits could be brought against it in the next 27 years").

27.     Additionally, although somewhat numerous, Debtors bankruptcy cases are not so complex that requiring Keshtgar to defend to District Court Action will interfere with the bankruptcy proceedings.

28.     Accordingly, the first Millard factor weighs (distraction of individuals important to the reorganization process) against extending the automatic stay.

### C.   Extension of the Stay Would Prejudice Gulf by Conferring upon Non-Debtors an "Unwarranted Immunity"

29.     Extension of the automatic stay to bar the District Court Action would confer an "unwarranted immunity" and work a hardship upon Gulf. This is because, in addition to there being no ongoing reorganization, the facts of this matter are clearly not within the exception to the general rule articulated by the Court of Appeals in Queenie. There is no obligation for Debtors to indemnify Non-Debtors for the claims asserted in the District Court Action, there are no claims against any insurer of Debtors, and there is not even any allegation that Debtors may be liable in

9

connection with the claims against Non-Debtors based upon alter ego or any other theory that Debtors are the "real party defendants."

30. First, Debtors have not even alleged that they are obligated to indemnify Non-Debtors.

31. Courts have extended the automatic stay where the debtor was obligated to indemnify the non-debtor defendants. See, e.g., In re N. Star Contracting Corp., 125 B.R. 368, 370-71 (S.D.N.Y. 1991) (explaining that where a debtor is obligated to indemnify a non-debtor defendant, "a special circumstance exists because a judgment against the non-debtor will affect directly the debtor's assets" and citing cases); In re Lomas Financial Corp., 117 B.R. 64 (S.D.N.Y. 1990) (extension of stay to encompass officers of debtor corporation's officers based upon obligation of debtor to indemnify officers); Robert Plan Corp., supra, 2010 WL 1193151, at *3-4 (same, noting that indemnification obligation would arise irrespective of whether claims against officers were successful or unsuccessful as long as officers acted in good faith).

32. However, here there is no obligation for Debtors to indemnify Non-Debtors in connection with the claims asserted in the District Court Acton.

33. Moreover, even where a debtor may be obligated to indemnify a non-debtor, the automatic stay cannot be extended where the debtor and non-debtor are jointly liable or the non-debtor's liability arises from his own breach of duty. Cano, supra, 287 F.R.D. at 261-62 (declining to extend stay on basis of indemnification obligation where debtor and non-debtors "are jointly and severally liable to the plaintiffs for violations of the FLSA and NYLL"); Aetna, supra, 140 B.R. at 60.

34. In Aetna, the District Court denied extension of the stay to bar claims against non-debtor officers who were entitled to indemnification by the debtor because "the action against them

is not based upon any acts committed in their capacity as [debtor's] officers, but results from their personal guarantees." Id.

35. In denying the requested extension of the stay, the court explained, "The very purpose of having defendants personally guaranty the payment and performance bonds was to provide an alternate avenue of recovery in case payment from [debtor] was not forthcoming." Id. The court held that "staying this action 'would work a hardship on plaintiff, by giving an unwarranted immunity from suit to solvent [codebtors], which would contravene the purposes underlying the automatic stay.'" Id. (quoting CAE, supra, 116 B.R. at 32).

36. Here, Non-Debtors are all independently liable to Gulf. The District Court Action is premised upon Non-Debtors' personal guarantees of Debtors' obligations to Gulf. As explained by the District Court in Aetna, non-debtors cannot obtain an extension of the automatic stay to bar such claims. Accordingly, the fourth Millard factor (independent liability) weighs against extending the automatic stay.

37. Second, as noted above, there is no claim against any insurer of Debtors. Although courts have extended the automatic stay to bar claims against insurers, see Johns-Manville Corp., supra, 26 B.R. at 435 (extending stay to encompass claims against debtor's insurer where insurance policies "constitute substantial property of the [debtor's] estate which will be diminished if and to the extent that third party direct actions against the insurance carriers result in plaintiffs' judgments"), this ground for extension of the automatic stay is clearly not applicable to this matter.

38. Accordingly, the third Millard factor (claims against insurers) weighs against extending the automatic stay.

39. Third, this matter is not one in which "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant." In fact, there

is not even any allegation that Debtors may be liable in connection with the claims against Non-Debtors based upon alter ego or any other theory that Debtors are the "real party defendants."

40.  Accordingly, extension of the automatic stay to the District Court Action would confer an "unwarranted immunity" and the second Millard factor therefore weighs against extending the automatic stay.

### D. Courts Have Repeatedly Rejected the Arguments Advanced by Debtors for Extending the Automatic Stay

41.  As noted above, the risk of harm to reorganization efforts may justify extension of the stay (notwithstanding that there are no such reorganization efforts here). "Limited or theoretical risk must be insufficient, however." Gray, supra, 230 B.R. at 244. Otherwise, the "rule against extending stays to officers and principals would be eviscerated." Id. "An actual, not just a theoretical, likelihood of harm to the reorganization must be shown before the automatic stay may be extended to protect non-debtors." FPSDA I, LLC, supra, 2012 WL 6681794, at *14-15.

42.  "It is not enough for the movant to show some limited risk, or that there is a theoretical threat to the reorganization, because it is always the case that a lawsuit against principals of the Debtor *could* have *some* effect on the reorganization." Id. at *7-8. "Rather, and in keeping with the principle that extending the stay to non-debtors is *extraordinary* relief, the party seeking extension of the stay must put forth real evidence demonstrating an actual impact upon, or threat to, the reorganization efforts if the stay is not extended." Id.

43.  Debtors' argument that, absent extension of the automatic stay, they will be prejudiced by the collateral estoppel effect of any judgments entered against Non-Debtors in the District Court Action is insufficient.

44.  The Court of Appeals rejected such an argument in Queenie, supra. There, the court explained, "We have not located any decision applying the stay to a non-debtor solely because of

an apprehended later use against the debtor of offensive collateral estoppel or the precedential effect of an adverse decision. If such apprehension could support application of the stay, there would be vast and unwarranted interference with creditors' enforcement of their rights against non-debtor co-defendants." Queenie, supra, 321 F.3d at 288.

45. Subsequently, in FPSDA I, LLC, supra, the Bankruptcy Court denied an application to extend the stay based upon a contention that the debtor's reorganization would be prejudiced by the application of collateral estoppel following the entry of a judgment against non-debtor agents of the debtor. In denying the application, the Bankruptcy Court cited Queenie's rejection of extending the stay on such grounds and noted that "[t]here is not now before the Court anything which indicates that collateral estoppel concerns pose the risk of immediate, adverse consequences to the Debtors' estates, at least in more than a theoretical or speculative sense." FPSDA I, LLC, supra, 2012 WL 6681794, at *15.

46. Further, courts have repeatedly held that the automatic stay provisions of the Bankruptcy Code are not intended to bar claims against guarantors of the debtor.

47. "'The Bankruptcy Code contemplates that creditors will be able to proceed against the guarantors and codebtors notwithstanding the automatic stay' on the property of the estate, and thus will be able to proceed outside of the bankruptcy court's jurisdiction." Schumacher v. White, 429 B.R. 400, 407 (E.D.N.Y. 2010) (citing United States v. Dos Cabezas Corp., 995 F.2d 1486 (9th Cir. 1993)).

48. "The bankruptcy proceeding is meant to protect the debtor, not third-party guarantors." Id. at 408 (quoting In re Larmar Estates, Inc., 5 B.R. 328, 331 (Bankr. E.D.N.Y. 1980)); Empire Enterprises JKB, Inc. v. Union City Contractors, Inc., 660 F. Supp. 2d 492, 495-96 (W.D.N.Y. 2009) ("The automatic stay does not apply, however, to claims against the bankrupt

13

debtor's sureties") (citing In re Capitol–York Constr. Corp., 43 B.R. 52, 55–56 (S.D.N.Y. 1984) (collecting cases)).

49. The Bankruptcy Code similarly provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).

50. Thus, "[i]t is a well established principle of bankruptcy law that a creditor is generally not barred from pursuing collection of a debt from a non-filing co-obligor or guarantor, even if one of the obligors, or the principal obligor, is a debtor in bankruptcy and is therefore shielded from collection efforts by the automatic stay." In re Ebadi, 448 B.R. 308, 316 (Bankr. E.D.N.Y. 2011) (citing Lynch v. Johns–Manville Sales Corp., 710 F.2d 1194, 1196 (6th Cir. 1983)). "A bankruptcy stay against a corporation does not affect the obligations of or actions arising from the obligations of non-bankrupt guarantors." CrossLand Fed. Sav. Bank by F.D.I.C. v. A. Suna & Co., 935 F. Supp. 184, 202 (E.D.N.Y. 1996) ("As a result of the bankruptcy proceedings, [plaintiff] has elected to pursue only its claims against the guarantor at this time. The stay of proceedings created by 11 U.S.C. § 362, therefore, does not affect this case and cannot be used as an affirmative defense by the [guarantor-defendants]"); In re Lyons, 177 B.R. 767, 770 (Bankr. N.D.N.Y. 1994) aff'd, 177 B.R. 772 (N.D.N.Y. 1995).

51. Accordingly, Debtors' arguments for extending the automatic stay are clearly without merit.

**WHEREFORE**, for the foregoing reasons, Gulf respectfully requests that the Court deny Debtors' application in its entirety.

                    Respectfully submitted,

                    McCUSKER, ANSELMI, ROSEN
                    & CARVELLI, P.C.
                    805 Third Avenue, 12th Floor
                    New York, New York, 10022
                    Telephone: (212) 308-0070
                    Facsimile: (917) 677-8978

                    LAW OFFICES OF WILLIAM S. KATCHEN, LLC
                    210 Park Avenue, Suite 301
                    Florham Park, New Jersey 07932
                    (Admitted *pro hac vice*)


                    *Counsel for Cumberland Farms, Inc. and Gulf Oil Limited Partnership*


                    By:    /s/ Bruce S. Rosen
                             Bruce S. Rosen

Dated: March 19, 2015